UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEAERRE SMITH, | ) | CASE NO. 5:24-cv-784 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JOSHUA BOLINGER, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff DeAerre Smith ("Plaintiff") filed this civil rights action under 42 U.S.C. § 1983 against twenty-six defendants. (Doc. No. 1.) In his complaint, Plaintiff alleges several complaints, including decisions made during his criminal trials in the Summit County Court of Common Pleas, the legal representation he received in his criminal cases, the conditions of confinement he experienced in the Summit County Jail, and the general operations of governmental institutions. (*Id.*) He asserts claims under the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution as well as seven provisions of the Ohio Constitution. (*Id.*) He seeks various changes to the conditions of the Summit County jail and monetary damages. (*Id.* at 47.)[1] In addition, Plaintiff filed a motion to proceed *in forma pauperis*. (Doc. No. 2.)

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

**I.     Background**

Summit County Common Pleas Court records indicate that Plaintiff has felony charges pending in two cases. *See State of Ohio v. Smith*, CR-2021-11-4288 (Summit Cty. Ct. Comm. Pl. filed Nov. 30, 2021) and *State of Ohio v. Smith*, CR-2021-12-4513 (Summit Cty. Ct. Comm. Pl. filed Dec. 17, 2021). At the time he was indicted on these charges, Plaintiff was serving concurrent sentences of two years of probation imposed in *State of Ohio v. Smith*, CR-2020-08-2058 (Summit Cty. Ct. Comm Pl. filed Aug. 14, 2020) and *State of Ohio v. Smith*, CR-2020-08-2217 (Summit Cty. Ct. Comm Pl. filed Aug. 27, 2020). His current pending charges led to additional charges of violating the terms of his probation in his prior cases, which resulted in an aggregate sentence of three years of incarceration for the probation violations. Plaintiff was sent to the Lake Erie Correctional Institution in November 2022.

Plaintiff's complaint asserts a broad array of complaints arising from years of interactions with the criminal justice system. Generally, Plaintiff's allegations can be grouped into two categories: (1) claims against those individuals involved in his criminal prosecutions, including claims against prosecutors, his former attorneys, and the judges that presided over his cases; and (2) challenges to the conditions in the Summit County Jail, including claims against corrections officers, the jail itself, and private companies that supply the jail with food.

First, Plaintiff brings claims relating to his criminal prosecutions. It is not clear from his Complaint to which criminal case or cases he is referring. In general, he alleges that because he was indicted, he was not provided with a preliminary hearing and was not appointed counsel until he was formally arraigned. (*Id.* at 19.) He objects to the representation he received from his attorneys, claiming they did not share evidence with him, did not file motions he deemed appropriate, and did not communicate with him regularly. (*Id.* at 25–29.) He indicates his

attorneys sought continuances without consulting with him and without asking him to waive his speedy trial rights. (*Id.*) He complains that the judges assigned to his case do not require his attorneys to enforce his rights. (*Id.* at 29–31.) Plaintiff states that he attempted to initiate disciplinary charges against his attorneys and the lawyers involved in his case, but the Ohio Supreme Court disciplinary counsel dismissed his grievances. (*Id.*)

Plaintiff asserts claims against several judges for improper rulings and mistreatment. (*Id.* at 29–30.) Plaintiff complains of treatment he received from Judge Mary Rowlands, a judge on the Summit County Court of Common Pleas, in 2010. (*Id.* at 16, 23–24.) Plaintiff had two criminal cases in 2010 that were pending before Judge Rowlands. *See State of Ohio v. Smith*, CR-2010-06-1659 (Summit Cty. Ct. Comm. Pl. filed June 17, 2010) and *State of Ohio v. Smith*, CR-2010-04-0983 (Summit Cty. Ct. Comm. Pl. filed Apr. 8, 2010). He indicates he sent Judge Rowlands a letter thanking her for convicting him and sentencing him to prison as it would get him off of the street and enable him to turn his life around. (Doc. No. at 16.) He states that he reused an envelope that he used to send correspondence to family and friends. (*Id.*) He indicates he used talcum powder in the envelopes to give them an appealing smell. (*Id.*) He claims Judge Rowlands accused him of being a terrorist due to the residue of white powder and the presence of a pubic hair found in the envelope. (*Id.*) Plaintiff also brings claims against Judge Joy Malek Oldfield and Judge Christine Loretta Croce, both on the Summit County Court of Common Pleas bench, for conduct relating to his criminal prosecutions. (*Id.* at 29–30, 43.)

Second, Plaintiff brings claims relating to his treatment at the Summit County Jail. At some point prior to the filing of this action, Plaintiff was moved from the Lake Erie Correctional Institution to the Summit County Jail. He objects to conditions in the Jail. For instance, he contends inmates are frequently locked down in nonemergency situations. (*Id.* at 13.) He

3

indicates that the food is inadequate and does not provide proper nutrition. (*Id.*) He claims the commissary prices are excessively high. (*Id.* at 13–14.) He alleges that inmates are deprived recreation time. (*Id.* at 14.) He states that the mental health department only provides medication and prescriptions can take up to three months to fill. (*Id.* at 32.) He states that his legal mail has been opened outside of his presence. (*Id.* at 13.) He contends he spent multiple days in the booking area sleeping on the floor until a bed opened up. (*Id.* at 31.) He states that on one occasion, Officer McCutcheon refused to pick up his laundry to be washed. (*Id.* at 32.) Plaintiff claims these conditions are far more restrictive that the conditions in prison. (*Id.* at 15.) He asked to be returned to prison pending trial, but his request was denied. (*Id.*)

Plaintiff also claims excessive force was used to extract him from his cell. (*Id.* at 32.) He does not provide much information regarding the events that led to his extraction. He states he was angry and demanded a phone call and a shower. (*Id.*) He indicates that deputies reported that he broke something, although it is not clear if that occurred before the extraction or in the course of the extraction. (*Id.*) He claims he was carried out of the cell and taken to segregation where he was strapped to a restraint chair. (*Id.* at 32–33.) He remained in the restraint chair for nearly six hours. (*Id.* at 33.) During that time, he was not permitted to use the restroom or get water. (*Id.*) A nurse came to see him and allowed him to stretch his joints. (*Id.*) He claims the deputies pulled his knee out of place. (*Id.*) He further states that one of the deputies only allowed him to use one arm to eat. (*Id.*) After he was released from the restraint chair, he remained in segregation for three days. (*Id.*)

II.     Analysis

   A.     **Legal Standard**

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

**B.     The Parties**

Plaintiff sued twenty-six defendants. As pleaded, the defendants are: Sergeant Joshua Bolinger; Deputy McCutcheon; Deputy Long; Deputy McLaughlin; Deputy Smith; Sheriff Kandy Fatherce; Becky McCutcheon (inmate services); Summit County Jail; Ohio Department of Rehabilitation Correction; Bureau of Adult Detention; City of Akron; Jonathan Sinn (attorney); Noah Munyer (attorney); James Armstrong (attorney); Donald Walker (attorney); Edward Smith (attorney); Scott Riley (attorney); Jamili Mitchell (prosecuting attorney); Amy Stone (Senior Assistant Disciplinary Counsel for the Ohio Supreme Court); Judge Mary Rowlands; Judge Christine Croce; Judge Joy Oldfield; Keefe[2] Commissary Network; Aramark Global Headquarters; Aramark Manager Christian Shreve; and Sunshine Peanut Company.

As an initial matter, many of these defendants can be dismissed from this case because they are not proper parties to the lawsuit. Civil rights claims may only be brought under 42 U.S.C. § 1983 against state and local government entities and officials. *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999). Private individuals and corporations are not subject to suit under § 1983. *Id.* Defendant Aramark Manager Christian Shreve is a private individual who cannot be sued under § 1983. Defendants Keefe Commissary Network, Aramark Global Headquarters, and the Sunshine Peanut Company are all private corporations. Accordingly, they cannot be sued under § 1983 and are dismissed from this suit.[3] Similarly, a public defender or a court-appointed defense attorney is a private party and not a state actor for purposes of § 1983 when operating under a lawyer's traditional functions. *See Powers v. Hamilton Cty. Public*

---

[2] For clarify, the docket reflects this entity as the "Kufe Commissary Network." However, as pleaded in the complaint, Plaintiff named Keefe Commissary Network.
[3] Plaintiff does not allege any facts relating to Keefe Commissary Network or Aramark Global Headquarters. Even if these entities could be sued under § 1983, they would be dismissed nonetheless.

*Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). The claims against attorneys Sinn, Armstrong, Walker, Smith, Munyer, and Riley all allege claims arising from a lawyer's traditional functions. These individuals are therefore dismissed.

Further, Summit County Jail is not *sui juris*, meaning it is not separate a legal entity under Ohio law that can sue or be sued. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (finding that "under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued"); *Cunningham v. Pierce*, No. 13-cv-213, 2013 WL 4832800, at *3 (S.D. Ohio Sept. 10, 2013) (county jail is not sui juris). Plaintiff's claims against the Summit County Jail fail as a matter of law.

In addition, seven of the Defendants are immune from suit under 42 U.S.C. § 1983. The Ohio Department of Rehabilitation and Correction and the Ohio Bureau of Adult Detention are absolutely immune from suits for damages under the Eleventh Amendment, which bars the imposition of liability upon States and State agencies. *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("state agencies, including corrections departments and defendants in their official capacities, cannot be sued for monetary damages without the state's consent, pursuant to the Eleventh Amendment"); *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F.Supp. 46, 48 (S.D. Ohio 1985). Judges are also absolutely immune from claims that stem from actions and decisions they made while presiding over a case. *See Mireles v. Waco*, 502 U.S. 9, 12–13 (1991) (per curiam); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Plaintiff's claims against Judge Rowlands, Judge Croce, and Judge Oldfield pertain to decisions they made in the course of his criminal cases. They are immune from suit and are dismissed.

Stone is entitled to absolute, quasi-judicial immunity from Plaintiff's claims against her for her decisions in her role as the Senior Assistant Disciplinary Counsel for the Ohio Supreme Court. *See Moncier v. Jones*, 557 F. App'x 407, 409–10 (6th Cir. 2014). Moreover, prosecutors are absolutely immune from suits for damages that stem from actions taken as the advocate for the State. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). Plaintiff's claims against Mitchell pertain to her actions as a prosecutor in one or more of Plaintiff's criminal cases. Mitchell is entitled to absolute prosecutorial immunity.

Plaintiff's claims against the City of Akron and Summit County Sheriff Kandy Fatherce are based on their employment and supervision of other individuals named as Defendants. A defendant cannot be held liable simply because he or she was charged with overseeing a subordinate who may have violated Plaintiff's constitutional rights. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). Therefore, to hold an individual supervisor liable, Plaintiff must affirmatively plead facts demonstrating the direct involvement of the defendant in the allegedly unconstitutional action. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). To hold a city or a county liable for the conduct of its employees, the claims must be based on constitutional violations that occurred as the result of the County's own official policy enacted by its lawmakers, *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), or by the County's own custom which, while not officially memorialized in an ordinance, is so permanent and well-settled that it carries the force of law, *Monell*, 436 U.S. at 691. Plaintiff must specifically identify the policy or custom and allege facts that directly connect the policy to the actions that were taken. Plaintiff does not allege any facts that reasonably connect the City of Akron or Sheriff Fatherce

to the actions described in the Complaint. The claims against those Defendants must be dismissed.

As a result of the above, the following Defendants remain: Sergeant Joshua Bolinger; Deputy McCutcheon; Deputy Long; Deputy McLaughin; Deputy Smith; and Becky McCutcheon (inmate services).

### C. Conditions of Confinement

Plaintiff includes claims against Summit County Jail Deputies which pertain to his conditions of confinement in the Summit County Jail. His claims against four of the Defendants are based on lockdown periods in his cell. Plaintiff contends that Joshua Bolinger is a supervisor in the jail and has the authority to decide the frequency with which the jail population will be out of their cells. (Doc. No. 1 at 36.) He states that Deputy Long did not take him to segregation for a conduct offense but instead confined him to his cell. (*Id.* at 41.) He claims that he tried to convince Deputies McLaughlin and Smith that frequent lockdowns were not necessary, but they did not agree with him or take steps to release the locked down portion of the population. (*Id.* at 42.) In addition to these claims, Plaintiff states that Bolinger ordered his extraction from his cell. (*Id.* at 36.) He does not allege which deputies were involved in the actual extraction and in which actions each of them engaged. Finally, Plaintiff includes some general claims regarding conditions in the jail. (*Id.* at 13–14, 31–36.) For instance, he claims Deputy McCutcheon refused to pick up his laundry and argued with him after a visit was denied. (*Id.* at 32.) He contends that Christine Shreve is the food manager and supplies only the minimum amount of food required. He claims inmates are never served fruit or milk (*id.* at 31) and that commissary is too expensive (*id.* at 13).

9

It is unclear when these events occurred. Plaintiff was convicted on July 13, 2021. Any claims arising after that date would be considered under the Eighth Amendment. Any claims that accrued prior to that date would be considered under the Fourteenth Amendment. Because Ohio's statute of limitations of two-years applies to § 1983 claims, any claims arising under the Fourteenth Amendment would be barred since it has been more than two years since Plaintiff's conviction. *See LRL Prop. v. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir. 1995). The Court will therefore only consider Plaintiff's claims under the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel," *Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9–10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter* set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. 501 U.S. 294, 298 (1991). A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id*. Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id*. Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id*. at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id*. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer*, 511 U.S. at 834.

The actions of which Plaintiff complains do not rise to the level of Eighth Amendment violations. Long periods of confinement or lockdown do not automatically result in an Eighth Amendment violation. *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Argue's confinement to his cell for twenty-three hours per day, Monday through Friday, does not rise to the level of a constitutional magnitude, because the confinement does not impose an atypical and significant hardship."). Indeed, "merely being placed in administrative lockdown, even for 23 hours a day, does not rise to the level of a constitutional violation." *Quinn v. C.I.A.*, No. 12-cv-135, 2013 WL 594240, at *4 (W.D. Ky. Feb. 15, 2013); *see also Burnett v. Wilson*, No. 06-cv-2621, 2007 WL 437921, at *2 (N.D. Ohio Feb 7, 2007) (concluding confinement to an infirmary cell for 23 hours per day for 35 days did not violate the Eighth Amendment). That is not to

suggest that other conditions which may accompany lockdowns do not violate the Eighth Amendment.  Plaintiff, however, alleges no facts to suggest that any of these factors are present.

Moreover, a cell extraction in and of itself is not an Eighth Amendment violation.  It is the manner in which the extraction is conducted that determines whether the Eighth Amendment is implicated.  The standard used to analyze "excessive force" claims is whether the officer acted in a good faith effort to maintain or restore discipline, or whether he acted maliciously and sadistically to cause harm.  *Hudson*, 503 U.S. at 8.  Although prison officials may often be required to use physical contact to ensure prison security, they can violate the Eighth Amendment if the contact represents an "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  Plaintiff claims that Bolinger gave the order for the extraction.  That does not violate the Eighth Amendment.  Plaintiff does not allege facts stating whether any other Defendants participated in this extraction and if so, in what actions he or she personally engaged.  Absent this information, he fails to state a claim against any of the stated Defendants with respect to the cell extraction.

The remainder of his claims—laundry not being picked up, repetitious menu items and small portion sizes of food, and arguing with deputies—do not present the types of deprivations that implicate the Eighth Amendment.  These claims are dismissed.

### D. Monitoring of Mail

In addition to his claims under the Eighth Amendment, it appears that Plaintiff may be attempting to assert a claim for denial of access to the court based on the monitoring of his mail.  (Doc. No. 1 at 13.)  To state a claim for denial of access to the courts, Plaintiff must allege Defendants' particular actions prevented him from pursuing or caused the rejection of either a specific non-frivolous direct appeal, habeas corpus petition, or civil rights action.  *Lewis v.*

*Casey*, 518 U.S. 343, 351 (1996). The right of access to the courts is directly related to an underlying claim, without which a Plaintiff cannot have suffered injury by being shut out of court. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff must therefore "plead and prove prejudice stemming from the asserted violation." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). In addition, inmates hold a confidentiality interest in legal mail that may impact the prisoner's legal rights or the attorney-client privilege. *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003). Plaintiff, however, has not alleged sufficient facts to suggest what was opened, when it was opened, and whether that had any impact on his case. He simply states that Becky McCutcheon opened his mail and Bolinger approved of this action. (Doc. No. 1 at 13, 37–38.) He does not indicate what was opened or how frequently this occurred. The monitoring of his mail appears to have occurred after Plaintiff mailed Judge Rowland a letter that contained white powder and a pubic hair. He alleges that when he was allowed to represent himself, the judge in his criminal case ordered the monitoring of his mail to stop. (*Id.* at 38.) There is no suggestion that the Defendants did not comply with that order. The factual allegations in the Complaint fail to establish an actual injury to state a claim for denial of access to the Courts.

E. **State Law Claims**

Finally, this Court declines jurisdiction to consider Plaintiff's claims under the Ohio Constitution. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed.

13

*Id.* Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear Plaintiff's state law claims.

### III. Conclusion

The Court GRANTS Plaintiff's motion to proceed *in forma pauperis*. For the reasons explained above, this action is DISMISSED pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

**Date**: August 7, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE